CARNES, Chief Judge,
concurring:
I concur in all of the Court’s opinion and write separately to discuss an independently adequate alternative reason why Chavez has failed to show a substantial likelihood of success on his claim that Florida’s use of midazolam hydrochloride in its 2013 Protocol violates the Eighth Amendment’s ban on cruel and unusual punishment.
The Supreme Court held in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (plurality opinion), that to establish an Eighth Amendment violation in the use of a lethal injection protocol, an inmate must show “an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless.” Id. at 50, 128 S.Ct. at 1531 (quotation marks omitted). To establish that in regard to the use of a particular drug, the inmate must prove not only that the drug being used creates “a substantial risk of serious harm,” but also that there is a “known and available alternative!]]” drug that is “feasible, readily implemented,” and that will “in fact significantly reduce [the] substantial risk of severe pain.” Id. at 50, 52, 61, 128 S.Ct. at 1531-32, 1537. The Court could not have been clearer about that:
[T]he proffered alternatives must effectively address a “substantial risk of serious harm.” To qualify, the alternative procedure must be feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain. If a State refuses to adopt such an alternative in the face of these documented advantages, without a legitimate peno-logical justification for adhering to its current method of execution, then a State’s refusal to change its method can be viewed as “cruel and unusual” under the Eighth Amendment.
Id. at 52, 128 S.Ct. at 1532 (citation omitted). As is true with every other element of a claim, the burden of proof on all aspects of the alternative drug requirement is on the plaintiff inmate.
*1274 The Supreme Court explained that it is not enough for an inmate merely to show that “a slightly or marginally safer alternative” is available. Id. at 51, 128 S.Ct. at 1531. Letting that showing suffice “would embroil the courts in ongoing scientific controversies beyond their expertise,” “threaten to transform [them] into boards of inquiry charged with determining ‘best practices’ for executions,” and “substantially intrude on the role of state legislatures in implementing their execution procedures.” Id.
An inmate obviously cannot begin to prove that there is an “available,” “feasible,” and “readily implemented” alternative drug that will “in fact significantly reduce a substantial risk of severe pain,” id. at 52, 61, 128 S.Ct. at 1532, 1537, without identifying a specific drug that meets those requirements. Chavez has failed to do that. While he attacks the use of midazolam in Florida’s three-drug lethal injection protocol, and broadly advocates for the adoption of a single-drug protocol consisting of a fatal dose of a barbiturate, he has not specifically identified any particular barbiturate that is even allegedly “available,” “feasible,” and can be “readily implemented” by the State of Florida.
Chavez’s filings in the district court did not contend that there is any specific alternative drug that is actually available for use by the State of Florida. In his amended complaint, the appendices to that complaint, and his omnibus motion, Chavez mentioned two barbiturates — pentobarbi-tal and sodium thiopental — that could be used in place of midazolam, but he admitted that neither drug was available for use in executions. Chavez conceded in his complaint that Florida’s “2013 Protocol was created in response to the unavailability of pentobarbital.” [1] Doc.15 at 6 (emphasis added). And in an appendix to his amended complaint, Chavez admitted that sodium thiopental is not available for use in lethal injections either. The appendix contains a “Request for Additional Public Records from the Florida Department of Corrections Pursuant to Fla. R.Crim. P. 3.852(f),” in which Chavez stated:
In 2010, international pressure against the death penalty resulted in a shortage of sodium thiopental and the states that employ capital punishment had to scramble for an alternative drug. On June 8, 2011, Florida followed the path of other states when it issued new lethal injection procedures substituting the barbiturate pentobarbital (Nembutal) for sodium thiopental.
Doc. 20 at 6.
Instead of alleging that pentobarbital and sodium thiopental are “available,” “feasible,” and can be “readily implemented” by the State of Florida in place of midazolam, Chavez represented to the district court in his filings that they are not available for use in lethal injections. Even if he had not made those concessions, however, his claim would still fail for the same reasons. An inmate must not only plead that a specifically named alternative drug *1275 is “available,” “feasible” and can be “readily implemented” in the challenged lethal injection protocol, he must also prove it. Chavez introduced not one jot, tittle, or iota of evidence that pentobarbital or sodium thiopental is available and can be readily obtained by the State of Florida for use in executing him or any other death-row inmate.
While Dr. Lubarsky’s declaration generally touted the relative virtues of barbiturates and broadly asserted that there are “alternative drugs [that] can reliably and humanely cause death without [the] risk of excruciating pain,” he conspicuously did not name a single barbiturate or any other drug that he believed Florida actually could obtain and use. And he did not testify that there was any such drug. While testifying, Dr. Lubarsky did make a passing reference to the anesthetic propo-fol as an alternative to midazolam, but neither he nor Chavez stated that it was actually available, feasible, and could be readily implemented by Florida in its lethal injection process. An alternative drug that its manufacturer, or its distributor, or the FDA will not allow to be used for lethal injection purposes is no drug at all for Baze purposes.[2]
Throughout the district court proceedings, the most Chavez did in the way of demonstrating an adequate alternative to the 2013 Protocol was asserting that a single-drug protocol was a “feasible, readily implemented alternative procedure.” He accurately summarized the extent of his contentions at the evidentiary hearing when he said: “We’ve offered the alternatives, the one-drug protocol.” But he never identified that one drug nor even suggested how Florida could obtain it for use in executions. Chavez has not come close to satisfying his burden of proving the existence of an “available,” “feasible,” and “readily implemented” alternative to mi-dazolam hydrochloride, let alone one that will significantly reduce a substantial risk of severe pain. This is another reason he has failed to establish a substantial likelihood of success on the merits of his Eighth Amendment challenge to the use of mi-dazolam in Florida’s 2013 Protocol.

. Even in the absence of Chavez's concessions, it is clear that sodium thiopental and pentobarbital are not available and feasible alternatives to Florida’s 2013 Protocol. Both drugs were once widely used in lethal injection protocols across the country, but they became unavailable for that use after their manufacturers, because of opposition to the death penalty, refused to let the drugs be used in executions. See Molly Hennessy-Fiske, Prolonged Execution Raises Debate on Lethal Injections, Balt. Sun, Jan. 19, 2014, at 20A; Eric Eckholm & Katie Zezima, States Face Shortage of Key Lethal Injection Drug, N.Y. Times, Jan. 21, 2011, http://www.nytimes. com/2011/01/22/us/221ethal.html; Manny Fernandez, Executions Stall as States Seek Different Drugs, N.Y. Times, Nov. 8, 2013, http:// www.nytimes.com/2013/11/09/us/executions-stall-as-states-seek-different-drugs.html.

. The reason that Dr. Lubarsky did not testify that Florida could readily obtain propofol to use in its lethal injection protocol probably is that he knew it could not. After Missouri, in 2012, adopted a single-drug lethal injection protocol using propofol, the European Union threatened to limit the export of propofol to American hospitals if it were used in executions. See Mo. to Proceed with Two Executions, Bos. Globe, Oct. 8, 2013, available at 2013 WLNR 25135924. In response to national pressure to avoid any interruption in the supply of propofol, Missouri abandoned its single-drug protocol. See Jim Salter, Missouri Governor Stops Execution Using New Drug, Bos. Globe, Oct. 12, 2013, available at 2013 WLNR 25592304.